PER CURIAM.
Tyler Richard Chapman was indicted on one count of burglary in the third degree, a violation of § 13A-7-7, Ala.Code 1975, for unlawfully entering or remaining in a building that was the property of Sarah Bodle, and one count of criminal surveillance, a violation of § 13A-11-32, Ala.Code 1975, for secretly observing Sarah Bodle’s activities while trespassing in the attic or roof area to her apartment. Following a jury trial, Chapman was convicted of the charged offense of third-degree burglary, and of attempted criminal surveillance, a violation of §§ 13A-4-2 and 13A-11-32. He was sentenced to seven years’ imprisonment on the burglary conviction; that sentence was suspended, and he was ordered to serve one year and one day in prison, followed by three years’ probation. He was sentenced to 90 days in the Baldwin County Corrections Center for the attempted-criminal-surveillance conviction. Chapman was also ordered to pay assorted fines and court costs.
The evidence presented at trial tended to show the following. Sarah Bodle lived in an apartment in the Robertsdale Village Apartments with her husband, Josh Bodle; they moved into the apartment in March 2004. The apartment they lived in had two stories, and there was an attic space above the apartment. Sarah testified that Chapman had never been invited into their apartment and that he had not been given permission to enter the attic space above their apartment.
Sarah testified that she heard noises frequently during the months she and Josh lived in the apartment, usually on weekday mornings after Josh had left for work and while she was in the shower. The noises sounded to her like someone was in the room with her. Josh testified that Sarah told him almost daily that she had heard noises while she was getting ready in the morning after he had left for work. Sarah stated that on one occasion while she and Josh were in bed, she heard a loud noise and made Josh check the apartment. Josh heard the noise, too, and he testified that he checked the apartment but found no intruders.
Josh and Sarah testified that the air conditioning did not work well on the second floor of their apartment. Sarah contacted the apartment manager about the problem, but the problem was never resolved before the incident underlying Chapman’s convictions occurred.
*1123 When Josh and Sarah returned to the apartment one evening in August 2004, they noticed a footprint-shaped hole or crack in their ceiling at the top of the stairs to the second floor.[1] Sarah testified that she then also observed “popcorn” ceiling material from around the ceiling vents in the bathroom and the master bedroom on the floor beneath the vents. Josh looked in the attic space that evening to determine whether the attic space above their apartment was connected to Chapman’s attic space; Josh said the spaces were not connected. The next day, Sarah contacted the apartment manager, Kim Barnett, about the crack in the ceiling. Sarah testified on cross-examination that they did not know whether their apartment lease included the attic space but that she thought they were allowed to store items in the attic.
Barnett testified that she went to the Bodies’ apartment and saw the footprint-shaped crack in the ceiling. She testified that the lease agreement did not include the attic space above the Bodies’ apartment but that tenants sometimes stored items in the attic space above their apartments. On cross-examination, Barnett testified that the Bodies had “rented that entire apartment” and that tenants were not told that they could not put anything in the attic above their apartments. (R. 110.) On redirect examination, Barnett testified that a tenant could reasonably believe that the attic space above the apartment was the tenant’s.
Barnett testified that a firewall in the attic separated the attic area of one apartment from the apartment next door and that because of that firewall, no other tenant would have had access to the attic space above the Bodies’ apartment unless the Bodies allowed the tenant into the attic or unless the tenant broke through the firewall.
The maintenance employee for the apartment complex, Basil Chavers, testified that the attic space and the ductwork above the Bodies’ apartment was intact and undisturbed when the Bodies moved in. Chavers testified that only the tenants living in the apartment below their attic spaces would have access to the attic space, unless someone broke through the firewall that separates the attic space of the apartments. Chavers testified that, before this incident, the Bodies had complained that the air conditioning did not work properly and that the second floor of the apartment did not cool as well as the first floor. Sarah had also reported to Chavers that some ceiling insulation had fallen on several occasions. Chavers testified that he saw some of the insulation that had fallen in the areas of the bathroom, hall, and master bedroom.
After the Bodies complained about the footprint-shaped crack in their ceiling, he went to the apartment and saw what appeared to be the imprint of “a perfect footprint” in the ceiling. (R. 117.) The Bodies said that they had not been in the attic. Chavers looked in the attic and saw a large hole in the firewall between the Bodies’ apartment and the apartment next door; he also saw that the ductwork in the areas above the bathroom and the master bedroom had been loosened. Chavers also saw that the insulation from the firewall to the areas above the bedroom and master bathroom of the Bodies’ apartment had been compressed so that it had trails through it. It was apparent to him that the firewall between the two attic spaces *1124 had been broken from Chapman’s side of the attic, Chavers said. When he looked down through the ductwork and vents he could see most of the Bodies’ bathroom and approximately three-quarters of their bedroom.
Chavers said that he and Barnett went next door to Chapman’s apartment. It was apparent to him that someone had been walking on Chapman’s ceiling also, because the ceiling was cracked in the area around the attic access. Chavers said that he and Barnett then contacted the police.
Anthony Dobson of the Robertsdale Police Department testified that he was called to the Bodies’ apartment and that he went into the attic space above their apartment. Investigator Dobson testified that the firewall that separated the apartments, which is made out of drywall, had been cut and knocked down and that it appeared that the damage originated from Chapman’s side of the attic. Investigator Dobson also stated that he observed trails in the insulation that went from the firewall to two ceiling vents in the Bodies’ apartment. The ductwork could easily be moved, he said, and when he moved it he could see through the vents into the bathroom and bedroom below.
Sergeant Rex Bishop of the Robertsdale Police Department testified that he spoke to Chapman at the police department after the evidence in the attic was discovered. Chapman agreed to give a statement, and the statement was admitted into evidence. Sergeant Bishop read Chapman’s statement for the jury:
“I moved into the above apartment in March. Later that month, I did the stupidest thing and went into the attic, and then pulled down the walls to get to the neighbor’s attic. I removed the duct work over the bathroom and main bedroom, in hopes to see something later when the neighbors returned. I got scared after I realized what I had done, and I left, never to return.
“Recently I became a Christian and follower of God and have been feeling guilty for the things I tore up in the attic. So on August the 18th, the neighbors left and I went up to fix all my wrong doings. I was trying to fix the duct work for good, and I stepped in a weak part of the floor, and it pushed in. I got scared and just tried to fix the wall, but it wouldn’t stay up. My girlfriend has been living with me and has always been with me since June. I never had a chance to fix it until the 18th. I am very ashamed of the few hours I was not in control of my hormones. But in trying to fix my mistake, I made one, which, rightfully so, lifted the guilt from my shoulders. I am truly sorry from my mistakes and I pray for forgiveness.”
(R. 144-45.)
Sergeant Bishop testified that he had looked into the attic and that Chapman’s statement about the number of times he had been in the Bodies’ attic was not consistent with Sergeant Bishop’s observation of the pathways in the insulation in the attic. (R. 146,149.)
I.
Chapman first argues that the evidence failed to show that he entered or remained unlawfully on property belonging to Sarah Bodle. Specifically, he contends that, although he was in the attic space above Sarah’s apartment, the indictment stated that only his foot pushed through the attic space above Sarah’s apartment and that the evidence was insufficient to prove that the attic space was covered by Sarah’s lease agreement.
“ ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence *1125 in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.”’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997) (quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992)). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998) (quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990)). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).”
Ware v. State, 949 So.2d 169, 175-76 (Ala. Crim.App.2006). See Ex Parte J.C., 882 So.2d 274, 277 (Ala.2003). Further, in determining whether the evidence is sufficient to support the verdict of the jury and the judgment of the trial court, this Court must accept as true the evidence presented by the State, view it in a light most favorable to the State, and accord the State all legitimate inferences therefrom. Rowe v. State, 662 So.2d 1227, 1229 (Ala. Crim.App.1995). Also,
“ ‘[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).’
“Ward[ v. State], 610 So.2d [1190,] 1191-92 [ (Ala.Crim.App.1992) ].”
Lockhart v. State, 715 So.2d 895, 899 (Ala. Crim.App.1997). Finally, it is well settled that “[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.” Smith v. State, 698 So.2d 189, 214 (Ala. Crim.App.1996), aff'd, 698 So.2d 219 (Ala.1997).
“In Johnson v. State, 555 So.2d 818, 819-20 (Ala.Cr.App.1989), this court noted the difference in ‘sufficiency’ and “weight’ as follows:
“ ‘The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, “viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt.” Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 2215, 72 L.Ed.2d 652 (1982). Accord, Prantl v. State, 462 So.2d 781, 784 (Ala.Cr.App.1984).
[[Image here]]
“ ‘In contrast, “[t]he ‘weight of the evidence’ refers to ‘a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.’ ” Tibbs v. Florida, 457 U.S. at 37-38 [102 S.Ct. at 2216] (emphasis *1126 added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 968, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr. App.), cert. denied, 402 So.2d 1088 (Ala.1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala.1981). “‘[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’ ” Harris v. State, 513 So.2d 79, 81 (Ala. Cr.App.1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931)).[’]
“(Emphasis in original.) See Smith v. State, 604 So.2d 434 (Ala.Cr.App.1992); Pearson v. State, 601 So.2d 1119 (Ala.Cr. App.1992); Curry v. State, 601 So.2d 157 (Ala.Cr.App.1992).”
Zumbado v. State, 615 So.2d 1223, 1240-41 (Ala.Crim.App.1993).
The evidence revealed that Chapman, a next-door neighbor of the Bodies’, cut a hole in the firewall separating the two apartments to gain access to the attic space above the Bodies’ apartment. Evidence was presented indicating that a walking trail where someone had walked was visible in the attic insulation. The insulation around the ductwork over the Bodies’ apartment had been pulled back so that a better view of their bedroom and bathroom could be had. Sarah testified that she had been hearing noises in the attic space above the apartment on a daily basis, especially when she was in the shower or in her bedroom and that Josh immediately notified the apartment manager when they discovered a “footprint-shaped crack” in the ceiling and fallen ceiling material in their master bedroom. The testimony further indicated that the attic space was intact and undisturbed when the Bodies moved in; that after the Bodies’ complaint, maintenance personnel with the apartment complex discovered that the attic space had been tampered with, so that an individual could look through the duct-work and vents to see into the apartment below; and that a subsequent investigation by law-enforcement investigators revealed that the damage to the sheetrock and firewall originated from Chapman’s side of the firewall.
“To constitute an entry, there must be a penetration of the space within the building by some part of the body of the defendant, or an accomplice of the defendant, or by an instrument inserted for the purpose of perpetrating a felony in the building.” Perry v. State, 407 So.2d 183, 185 (Ala.Crim.App.1981). The State presented ample evidence indicating that Chapman entered the Bodies’ attic space with the intent to spy on Sarah.
Moreover, “ ‘[i]n Alabama, “burglary, like trespass, is an offense against the possession, and hence the test for the purpose of determining in whom the ownership of the premises should be laid in an indictment is not the title, but the occupancy or possession at the time the offense was committed.” ’ ” South v. City of Mountain Brook, 688 So.2d 292, 296 (Ala. Crim.App.1996). See also § 13A-7-1(2), Ala.Code 1975. Consequently, Chapman’s argument that the indictment was fatal because it alleged that the property belonged to Sarah Bodle although it did not belong to her is without merit based upon the above-stated legal authority. The State’s evidence was sufficient to sustain Chapman’s convictions, and any conflicts in the evidence and credibility choices were for the jury to resolve. Therefore, Chapman is not entitled to any relief on this argument.
*1127 ii.
Chapman also argues that, under the circumstances of this case, convictions for both attempted criminal surveillance and third-degree burglary violated double-jeopardy principles. Specifically, Chapman states: “[T]o be found guilty of [burglary] and [attempted criminal surveillance] requires the exact same proof of the exact same elements: Trespassing with the intent to commit criminal surveillance.” (Chapman’s brief at p. 18.) We agree.
“Under the principles of double jeopardy, ‘[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.’ Blockburger v. United States, 284 U.S. 299, 304 (1932). Therefore, ‘ “[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.”’ Id. (quoting Gavieres v. United States, 220 U.S. 338, 342 (1911), in turn quoting Morey v. Commonwealth, 108 Mass. 433 (1871)).”
Ex parte Dixon, 804 So.2d 1075, 1078-79 (Ala.2000).
Third-degree burglary is defined in § 13A-7-7, Ala.Code 1975, as follows:
“(a) A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.”
(Emphasis added.)
Count I of the indictment charged that Chapman
“did, knowingly enter or remain unlawfully in a building, the property of Sarah Bodle, a better description of the owner being otherwise unknown to the Grand Jury, with the intent to commit a crime therein, to-wit: Criminal Surveillance, in violation of § 13A-7-7 of the Code of Alabama.”
(C. 15.) (Emphasis added.)
Criminal surveillance is defined in § 13A-11-32, Ala.Code 1975, as follows:
“(a) A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place. ”
(Emphasis added.)
Count II of the indictment charged that Chapman
“did intentionally secretly observe the activities of Sarah Bodle for the purpose of spying on and invading the privacy of the said Sarah Bodle while trespassing in a private place, to-wit: the attic and/or roof area to her apartment, in violation of § 13A-11-32 of the Code of Alabama[.]”
(C. 15.) (Emphasis added.)
Definitions also relevant to this analysis are:
“(2) Private place. A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but such term does not include a place to which the public or a substantial group of the public has access.
“(3) Surveillance. Secret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person observed.”
§ 13A-11-30, Ala.Code 1975.
Finally, a person is guilty of trespassing if he or she knowingly enters or remains unlawfully in a building. § 13A-7-3, Ala. Code 1975.
*1128 Chapman correctly argues that, under the facts of this case, each crime of which he was convicted required proof that he was trespassing in a private place belonging to Sarah Bodle and that, while he was trespassing, he had the intent to commit criminal surveillance. Because count I of the indictment charged Chapman with burglary of a building belonging to Sarah Bodle, and because Sarah lived in a multi-occupant building, all parts of her apartment constituted a “private place,” as that term is defined by statute. Therefore, the elements of burglary, as it was charged, in this case, were the same elements necessary to prove attempted criminal surveillance. Proof of the burglary did not require proof of an additional element that was not required to prove attempted criminal surveillance. Chapman’s conviction for attempted criminal surveillance, however, required proof of the additional element of an overt act toward criminal surveillance. See § 13A-4-2(a), Ala.Code 1975 (“A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.”). Therefore, the principles set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), were violated because each crime, as it was charged here, did not require proof of an additional fact that the other crime did not require.[2]
Furthermore, § 13A-4-5(b), Ala.Code 1975, provides that a defendant may not be convicted of both the actual commission of an offense and of an attempt to commit the offense when those convictions are based on the same course of conduct. Analogously, Chapman cannot be convicted of the completed crime of third-degree burglary and of attempted criminal surveillance when those crimes are based on the same course of conduct and require proof of the same elements. Thus, we hold that, based on the specific facts of this case, Chapman’s convictions for both third-degree burglary and attempted criminal surveillance violated double-jeopardy principles. Therefore, we must remand this case for the trial court to vacate Chapman’s conviction and sentence for attempted criminal surveillance.
For the above-stated reasons, we affirm Chapman’s conviction and sentence for third-degree burglary. However, we remand this case to the trial court for that court to vacate Chapman’s conviction and sentence for attempted criminal surveillance.
AFFIRMED AS TO CONVICTION FOR THIRD-DEGREE BURGLARY; REVERSED AND REMANDED AS TO CONVICTION FOR ATTEMPTED CRIMINAL SURVEILLANCE.
WELCH, KELLUM, and MAIN, JJ., concur.
WINDOM, J., concurs in part and dissents in part, with opinion, which WISE, P.J., joins.

. The defect in the ceiling was referred to as both a "hole” and a "crack" during the trial. (R. 75, 76, 84, 108.)

. Before trial, Chapman moved for dismissal of either count I or count II, and he argued that the charges were multiplicitous. Although the prosecutor argued that each crime required an element that the other did not, he also said: "Now, he can be convicted of both, but he can’t be sentenced for both.” (R. 70.) The prosecutor's comment appears to indicate his understanding that the elements of the crimes overlapped.