SMITH, Justice.
Tyler Richard Chapman was convicted of burglary in the third degree, a violation of § 13A-7-7, Ala.Code 1975, and of attempted criminal surveillance, a violation of §§ 13A-4-2 and 13A-11-32, Ala.Code 1975. He was sentenced to 7 years’ imprisonment on the burglary conviction[1] and to 90 days’ imprisonment in the Baldwin County Corrections Center for the attempted-eriminal-surveillance conviction. Chapman appealed his convictions and sentences to the Court of Criminal Appeals. That court affirmed the conviction and sentence for third-degree burglary but reversed Chapman’s conviction and sentence for attempted criminal surveillance. Chapman v. State, 64 So.3d 1120 (Ala. *1134 Crim.App.2009). The State petitioned for the writ of certiorari, and we granted the State’s petition to review the Court of Criminal Appeals’ reversal of Chapman’s conviction for attempted criminal surveillance. We reverse and remand.

Facts and Procedural History

Chapman was indicted on one count of burglary in the third degree, a violation of § 13A-7-7, Ala.Code 1975, and one count of criminal surveillance, a violation of § 13A-11-32, Ala.Code 1975. The opinion of the Court of Criminal Appeals states the following relevant facts:
“The evidence presented at trial tended to show the following. Sarah Bodle lived in an apartment in the Robertsdale Village Apartments with her husband, Josh Bodle; they moved into the apartment in March 2004. The apartment they lived in had two stories, and there was an attic space above the apartment. Sarah testified that Chapman had never been invited into their apartment and that he had not been given permission to enter the attic space above their apartment.
“Sarah testified that she heard noises frequently during the months she and Josh lived in the apartment, usually on weekday mornings after Josh had left for work and while she was in the shower. The noises sounded to her like someone was in the room with her. Josh testified that Sarah told him almost daily that she had heard noises while she was getting ready in the morning after he had left for work. Sarah stated that on one occasion while she and Josh were in bed, she heard a loud noise and made Josh check the apartment. Josh heard the noise, too, and he testified that he checked the apartment but found no intruders.
“Josh and Sarah testified that the air conditioning did not work well on the second floor of their apartment. Sarah contacted the apartment manager about the problem, but the problem was never resolved before the incident underlying Chapman’s convictions occurred.
“When Josh and Sarah returned to the apartment one evening in August 2004, they noticed a footprint-shaped hole or crack in their ceiling at the top of the stairs to the second floor. Sarah testified that she then also observed ‘popcorn’ ceiling material from around the ceiling vents in the bathroom and the master bedroom on the floor beneath the vents. Josh looked in the attic space that evening to determine whether the attic space above their apartment was connected to Chapman’s attic space; Josh said the spaces were not connected. The next day, Sarah contacted the apartment manager, Kim Barnett, about the crack in the ceiling. Sarah testified on cross-examination that they did not know whether their apartment lease included the attic space but that she thought they were allowed to store items in the attic.
“Barnett testified that she went to the Bodies’ apartment and saw the footprint-shaped crack in the ceiling. She testified that the lease agreement did not include the attic space above the Bodies’ apartment but that tenants sometimes stored items in the attic space above their apartments. On cross-examination, Barnett testified that the Bodies had ‘rented that entire apartment’ and that tenants were not told that they could not put anything in the attic above their apartments. On redirect examination, Barnett testified that a tenant could reasonably believe that the attic space above the apartment was the tenant’s.
*1135 “Barnett testified that a firewall in the attic separated the attic area of one apartment from the [attic area of the] apartment next door and that because of that firewall, no other tenant would have had access to the attic space above the Bodies’ apartment unless the Bodies allowed the tenant into the attic or unless the tenant broke through the firewall.
“The maintenance employee for the apartment complex, Basil Chavers, testified that the attic space and the duct-work above the Bodies’ apartment was intact and undisturbed when the Bodies moved in. Chavers testified that only the tenants living in the apartment below their attic spaces would have access to the attic space, unless someone broke through the firewall that separates the attic space of the apartments. Chavers testified that, before this incident, the Bodies had complained that the air conditioning did not work properly and that the second floor of the apartment did not cool as well as the first floor. Sarah had also reported to Chavers that some ceiling insulation had fallen on several occasions. Chavers testified that he saw some of the insulation that had fallen in the areas of the bathroom, hall, and master bedroom.
“After the Bodies complained about the footprint-shaped crack in their ceiling, he went to the apartment and saw what appeared to be the imprint of ‘a perfect footprint’ in the ceiling. The Bodies said that they had not been in the attic. Chavers looked in the attic and saw a large hole in the firewall between the Bodies’ apartment and the apartment next door; he also saw that the ductwork in the areas above the bathroom and the master bedroom had been loosened. Chavers also saw that the insulation from the firewall to the areas above the bedroom and master bathroom of the Bodies’ apartment had been compressed so that it had trails through it. It was apparent to him that the firewall between the two attic spaces had been broken from Chapman’s side of the attic, Chavers said. When he looked down through the ductwork and vents he could see most of the Bodies’ bathroom and approximately three-quarters of their bedroom.
“Chavers said that he and Barnett went next door to Chapman’s apartment. It was apparent to him that someone had been walking on Chapman’s ceding also, because the ceiling was cracked in the area around the attic access. Chav-ers said that he and Barnett then contacted the police.
“Anthony Dobson of the Robertsdale Police Department testified that he was called to the Bodies’ apartment and that he went into the attic space above their apartment. Investigator Dobson testified that the firewall that separated the apartments, which is made out of drywall, had been cut and knocked down and that it appeared that the damage originated from Chapman’s side of the attic. Investigator Dobson also stated that he observed trails in the insulation that went from the firewall to two ceiling vents in the Bodies’ apartment. The ductwork could easily be moved, he said, and when he moved it he could see through the vents into the bathroom and bedroom below.
“Sergeant Rex Bishop of the Roberts-dale Police Department testified that he spoke to Chapman at the police department after the evidence in the attic was discovered. Chapman agreed to give a statement, and the statement was admitted into evidence. Sergeant Bishop read Chapman’s statement for the jury:
“ T moved into the above apartment in March. Later that month, I did the stupidest thing and went into the at *1136 tic, and then pulled down the walls to get to the neighbor’s attic. I removed the duct work over the bathroom and main bedroom, in hopes to see something later when the neighbors returned. I got scared after I realized what I had done, and I left, never to return.
“ ‘Recently I became a Christian and follower of God and have been feeling guilty for the things I tore up in the attic. So on August the 18th, the neighbors left and I went up to fix all my wrong doings. I was trying to fix the duct work for good, and I stepped in a weak part of the floor, and it pushed in. I got scared and just tried to fix the wall, but it wouldn’t stay up. My girlfriend has been living with me and has always been with me since June. I never had a chance to fix it until the 18th. I am very ashamed of the few hours I was not in control of my hormones. But in trying to fix my mistake, I made one, which, rightfully so, lifted the guilt from my shoulders. I am truly sorry from my mistakes and I pray for forgiveness.’
“Sergeant Bishop testified that he had looked into the attic and that Chapman’s statement about the number of times he had been in the Bodies’ attic was not consistent with Sergeant Bishop’s observation of the pathways in the insulation in the attic,”
64 So.3d at 1122-24 (citations to record omitted).
At the conclusion of his jury trial, Chapman was convicted of burglary in the third degree, a violation of § ISA-7-7, Ala.Code 1975, and of attempted criminal surveillance, a violation of §§ 13A-4-2 and 13A-11-32, Ala.Code 1975. On appeal, the Court of Criminal Appeals affirmed the burglary conviction but reversed the attempted-criminal-surveillance conviction. Chapman, 64 So.3d at 1128. Judge Windom, in an opinion joined by Presiding Judge Wise, dissented from that portion of the Court of Criminal Appeals’ judgment reversing Chapman’s conviction for attempted criminal surveillance. We granted the State’s petition for the writ of cer-tiorari to review that part of the Court of Criminal Appeals’ judgment reversing Chapman’s conviction for attempted criminal surveillance.

Discussion

In its opinion, the Court of Criminal Appeals first held that there was sufficient evidence to sustain Chapman’s convictions. That aspect of the Court of Criminal Appeals’ judgment is not before us. However, the Court of Criminal Appeals also held “that, based on the specific facts of this case, Chapman’s convictions for both third-degree burglary and attempted criminal surveillance violated double-jeopardy principles.” 64 So.3d at 1128. The court reasoned:
“ ‘Under the principles of double jeopardy, “[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Blockburger v. United States, 284 U.S. 299, 304 (1932). Therefore, “ ‘[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.’” Id. (quoting Gavieres v. United States, 220 U.S. 338, 342 (1911), in turn quoting Morey v. Commonwealth, 108 Mass. 433 (1871)).’
*1137 “Ex parte Dixon, 804 So.2d 1075, 1078-79 (Ala.2000).
“Third-degree burglary is defined in § 18A-7-7, Ala.Code 1975, as follows:
“ ‘(a) A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.’
“(Emphasis added.)
“Count I of the indictment charged that Chapman
“ ‘did, knowingly enter or remain unlawfully in a building, the property of Sarah Bodle, a better description of the owner being otherwise unknown to the Grand Jury, with the intent to commit a crime therein, to-wit: Criminal Surveillance, in violation of § 13A-7-7 of the Code of Alabama.’
“(Emphasis added.)
“Criminal surveillance is defined in § 13A-11-32, Ala.Code 1975, as follows:
‘“(a) A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place.’
“(Emphasis added.)
“Count II of the indictment charged that Chapman
“ ‘did intentionally secretly observe the activities of Sarah Bodle for the purpose of spying on and invading the privacy of the said Sarah Bodle while trespassing in a private place, to-wit: the attic and/or roof area to her apartment, in violation of § 13A-11-32 of the Code of Alabama[.]’
“(Emphasis added.)
“Definitions also relevant to this analysis are:
“ ‘(2) Private place. A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but such term does not include a place to which the public or a substantial group of the public has access.
“ ‘(3) Surveillance. Secret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person observed.’
“§ 13A-11-30, Ala.Code 1975.
“Finally, a person is guilty of trespassing if he or she knowingly enters or remains unlawfully in a building. § 13A-7-3, Ala.Code 1975.
“Chapman correctly argues that, under the facts of this case, each crime of which he was convicted required proof that he was trespassing in a private place belonging to Sarah Bodle and that, while he was trespassing, he had the intent to commit criminal surveillance. Because count I of the indictment charged Chapman with burglary of a building belonging to Sarah Bodle, and because Sarah lived in a multi-occupant building, all parts of her apartment constituted a ‘private place,’ as that term is defined by statute. Therefore, the elements of burglary, as it was charged in this case, were the same elements necessary to prove attempted criminal surveillance. Proof of the burglary did not require proof of an additional element that was not required to prove attempted criminal surveillance. Chapman’s conviction for attempted criminal surveillance, however, required proof of the additional element of an overt act toward criminal surveillance. See § 13A-4-2(a), Ala.Code 1975 (‘A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.’). Therefore, the principles set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932), were violated because *1138 each crime, as it was charged here, did not require proof of an additional fact that the other crime did not require.[2]
“Furthermore, § 13A-4-5(b), Ala. Code 1975, provides that a defendant may not be convicted of both the actual commission of an offense and of an attempt to commit the offense when those convictions are based on the same course of conduct. Analogously, Chapman cannot be convicted of the completed crime of third-degree burglary and of attempted criminal surveillance when those crimes are based on the same course of conduct and require proof of the same elements. Thus, we hold that, based on the specific facts of this case, Chapman’s convictions for both third-degree burglary and attempted criminal surveillance violated double-jeopardy principles. Therefore, we must remand this case for the trial court to vacate Chapman’s conviction and sentence for attempted criminal surveillance.
Chapman, 64 So.3d at 1127-28 (citations to record omitted).
In its materials to this Court, the State argues that the Court of Criminal Appeals erred in its double-jeopardy analysis. Specifically, the State contends, as Judge Windom concluded in her opinion dissenting in part, that Chapman’s “convictions were based on separate acts and [that] ‘separate evidence supported each charge.’” 64 So.3d at 1130 (Windom, J., concurring in part and dissenting in part) (quoting Duffy v. State, 789 P.2d 821, 831 (Wyo.1990)).[2]
Judge Windom noted in her dissenting opinion:
“In Blockburger v. United States, the Supreme Court of the United States established the ‘same elements’ test for determining whether two charges constitute the ‘same offenses’ in violation of the Double Jeopardy Clause of the Fifth Amendment. 284 U.S. 299, 304 (1932). Under the Bloclcburger test, ‘where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.’ Id. (emphasis added). This court has *1139 held that ‘[t]he constitutional provision that no one shall be put in jeopardy twice for the same offense is broad enough to mean that no one can lawfully be punished twice for different offenses growing out of the same state of facts.’ McClellan v. State, 484 So.2d 1150, 1155 (Ala.Crim.App.1985).”
64 So.Bd at 1130 (Windom, J., concurring in part and dissenting in part). However, the Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), same-elements test and the Double Jeopardy Clause[3] are not implicated “[w]here separate acts or distinct facts establish two crimes.” 64 So.3d at 1130 (Windom, J., concurring in part and dissenting in part) (citing Duffy, 789 P.2d at 831). See also United States v. Schales, 546 F.3d 965, 978 (9th Cir.2008) (“The Blockburger test is implicated only ‘where the same act or transaction constitutes a violation of two distinct statutory provisions.”’ (quoting Blockburger, 284 U.S. at 304, 52 S.Ct. 180)).
In the present case, Sgt. Rex Bishop of the Robertsdale Police Department testified regarding Chapman’s confession (1) that he removed the firewall separating the attics of his apartment and the Bodies’ apartment; (2) that he entered the attic space over the Bodies’ apartment; and (3) that once he was inside the attic space he “ ‘removed the duct work over the bathroom and main bedroom.’” 64 So.3d at 1124. In his statement, Chapman admitted that he did those things in order “ ‘to see something later when the neighbors returned.’” 64 So.3d at 1124. Thus, by Chapman’s own admission, at the moment he entered the attic space over the Bodies’ apartment, he had committed all the acts necessary to be found guilty of third-degree burglary.
“The State’s evidence established that Chapman removed the firewall separating the attic of his apartment and the attic of the Bodies’ apartment and entered the Bodies’ apartment with the intent to commit criminal surveillance. At that point, the crime of third-degree burglary was complete. See § 13A-7-7, Ala.Code 1975 (‘A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.’).”
64 So.3d at 1130-31 (Windom, J., concurring in part and dissenting in part).
In the opinion of the dissenting judges in Chapman, after he had committed all the acts necessary to be convicted of third-degree burglary,
“Chapman committed additional acts in furtherance of the crime of criminal surveillance. Specifically, Chapman walked across the Bodies’ attic and removed the air-conditioner ductwork from the air-conditioner vents to enable him to see into the Bodies’ bedroom and bathroom. The acts of removing the ductwork from two vents occurred after the burglary was complete and establish the overt-act element of attempted criminal surveillance.”
64 So.3d at 1131 (Windom, J., concurring in part and dissenting in part). Thus, in their opinion, “the overt act necessary to establish the crime of attempted criminal surveillance was a separate act from the completed burglary and was proved by evidence separate and distinct from the evidence establishing the burglary.” Id. (citing Yparrea v. Dorsey, 64 F.3d 577, 580 (10th Cir.1995), and Moser v. Commonwealth, 799 S.W.2d 21, 22 (Ky.1990)).
The majority and dissenting opinions of the Court of Criminal Appeals appear to *1140 focus on the one occasion Chapman admitted to intruding into the attic space over the Bodies’ apartment and removing the ductwork in an attempt “ ‘to see something later when the neighbors returned.’ ” 64 So.Bd at 1124. Under those circumstances, Judge Windom did not think Chapman’s convictions violated double-jeopardy principles, because “the overt act necessary to convict Chapman of attempted criminal surveillance [was] separate from and occurred after the acts establishing the third-degree burglary.” 64 So.3d at 1181 (Windom, J., concurring in part and dissenting in part). The State, in its materials to this Court, addresses the majority opinion of the Court of Criminal Appeals in a similar manner. The State cites several authorities in support of the proposition that a defendant who commits a separate crime after having completed a crime may be convicted of both crimes even though the acts constituting the two crimes occurred close in time.[4]
In the present case, however, there was evidence indicating that Chapman intruded into the attic space over the Bodies’ apartment on multiple occasions over a period of months and that the ductwork over the Bodies’ bathroom and bedroom— which would have allowed Chapman to attempt to see the Bodies — was removed during that entire period. Specifically, Sgt. Bishop testified “that Chapman’s statement about the number of times he had been in the Bodies’ attic was not consistent with Sergeant Bishop’s observation of the pathways in the insulation in the attic.” Chapman, 64 So.3d at 1124. The Bodies testified that they frequently heard noises during the months that they lived in the apartment; Sarah stated that she heard the noises almost daily, and she described them as sounding “like someone was in the room with her.” 64 So.3d at 1122. In addition to Chapman’s statement that he “tr[ied] to fix the duct work for good” on August 18 (which would have been five months after he had removed it), the Bodies “testified that the air conditioning did not work well on the second floor of their apartment.” 64 So.3d at 1122.
Thus, because the State offered evidence indicating that Chapman made multiple intrusions into the Bodies’ attic in an attempt “ ‘to see something,’ ” it is not necessary for us to assume, in deciding whether Chapman’s convictions for burglary and attempted criminal surveillance violate double-jeopardy principles, that Chapman intruded into the Bodies’ attic only once in an attempt to see the Bodies. Rather, we conduct our double-jeopardy analysis with the recognition that the State offered evidence indicating that Chapman committed acts constituting third-degree burglary and attempted criminal surveillance on several, separate occasions over the course of several months. With that in mind, we agree with Judge Windom’s ultimate conclusion that the Double Jeopardy Clause and the Bbclcbwrger test are not implicated in this case because the convictions were based on separate acts. Thus, we agree with Judge Windom that “Chapman’s convictions for attempted criminal surveillance and third-degree burglary do not violate the Double Jeopardy Clause of *1141 the Fifth Amendment.” 64 So.3d at 1131 (Windom, J., concurring in part and dissenting in part).
The Court of Criminal Appeals also stated the following:
“Furthermore, § 13A-4-5(b), Ala. Code 1975, provides that a defendant may not be convicted of both the actual commission of an offense and of an attempt to commit the offense when those convictions are based on the same course of conduct. Analogously, Chapman cannot be convicted of the completed crime of third-degree burglary and of attempted criminal surveillance when those crimes are based on the same course of conduct and require proof of the same elements. Thus, we hold that, based on the specific facts of this case, Chapman’s convictions for both third-degree burglary and attempted criminal surveillance violated double-jeopardy principles.”
Chapman, 64 So.3d at 1128. However, as we have noted, the evidence upon which Chapman was convicted indicated that there were multiple instances in which he intruded into the attic space above the Bodies’ apartment and attempted to commit criminal surveillance. Thus, because Chapman was not convicted of two crimes based on a single act or transaction, the merger doctrine in § 13A-4-5(b) does not apply in this case.

Conclusion

The judgment of the Court of Criminal Appeals is reversed insofar as it reversed Chapman’s conviction and sentence for attempted criminal surveillance. The cause is remanded to the Court of Criminal Appeals for further proceedings consistent with this opinion.
REVERSED AND REMANDED.[5],*
COBB, C.J., and LYONS, WOODALL, STUART, and BOLIN, JJ., concur.
PARKER, MURDOCK, and SHAW, JJ., dissent.

. The trial court split Chapman’s sentence on the third-degree-burglary conviction and ordered Chapman to serve one year and one day in prison, followed by three years' probation.

"2 Before trial, Chapman moved for dismissal of either count I or count II, and he argued that the charges were multiplicitous. Although the prosecutor argued that each crime required an element that the other did not, he also said: 'Now, he can be convicted of both, but he can’t be sentenced for both.' The prosecutor’s comment appears to indicate his understanding that the elements of the crimes overlapped.”

. In his dissenting opinion, Justice Shaw summarizes the State's position as arguing generally "that there were separate acts constituting the burglary and the attempted criminal surveillance...." 64 So.3d at 1142. He disagrees with this Court's decision today, however, because, he says, the State did not make the specific argument "that the criminal acts of burglary and attempted criminal surveillance occurred on different occasions.” Id.
In its materials to this Court, the State clearly articulated the position that the double-jeopardy analysis by the Court of Criminal Appeals did not apply because Chapman committed separate acts constituting the separate offenses. See State’s petition, p. 5 ("The majority's opinion [in the Court of Criminal Appeals] conflicts with Blockburger [v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] and \Exparte'\ Dixon, [804 So.2d 1075 (Ala.2000),] because the holdings in those cases apply when the defendant’s conduct applies to the 'same act or transaction.' ”); State's brief, p. 9 ("[The Bloclcburger test, however, does not apply when there is more than one act-” (emphasis added)). Our decision is consistent with the State’s arguments in that regard.

. See U.S. Const. amend. V; Art. I, § 9, Ala. Const. 1901.

. See State's brief, pp. 9-12 (citing Jones v. State, 672 So.2d 1366, 1368 (Ala.Crim.App. 1995); Ogle v. State, 587 So.2d 1270, 1271 (Ala.Crim.App.1991); State v. Howard F., 86 Conn.App. 702, 712, 862 A.2d 331, 340 (2004); Maxey v. State, 239 Ga.App. 638, 639, 521 S.E.2d 673, 675 (1999); Phillips v. Commonwealth, 679 S.W.2d 235, 236 (Ky.1984); State v. Lefeure, 778 So.2d 744, 752 (La.Ct. App.2001); People v. Squires, 240 Mich.App. 454, 459, 613 N.W.2d 361, 365 (2000), overruled on other grounds, People v. Nutt, 469 Mich. 565, 595, 677 N.W.2d 1, 17-18 (2004); Hughery v. State, 915 So.2d 457, 459 (Miss.Ct. App.2005)).

. We have not reviewed that portion of the Court of Criminal Appeals’ judgment holding that there was sufficient evidence to sustain Chapman’s convictions or that portion affirming his conviction for third-degree burglary. Therefore, those portions of the Court of Criminal Appeals’ judgment are not affected by our decision!

 Note from the reporter of decisions: On December 3, 2010, on remand from the Alabama Supreme Court, the Court of Criminal Appeals affirmed, without opinion (CR-07-1360).